FILED

2005 Mar-10  PM 02:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **JOSEPH MALCOLM WILLIAMS,** | ] |
| | ] |
| **Plaintiff,** | ] |
| | ] |
| **v.** | ]  **CASE NO.: CV-03-HS-2529-S** |
| | ] |
| **MUNICIPALITY OF CLEVELAND,** | ] |
| **ALABAMA, et al.,** | ] |
| | ] |
| **Defendants.** | ] |

# Memorandum of Opinion

## I.   INTRODUCTION

This is a civil action filed by the Plaintiff Joseph Malcolm Williams, against the Defendants Municipality of Cleveland, Alabama; Tim Jones; Tony Dodd; and Gerald Loring.  The original Complaint alleged causes of action for: 1) violation of the Plaintiff's constitutional rights pursuant to 42 U.S.C. § 1983 and § 1988; 2) false imprisonment; 3) assault and battery, 4) wantonness; and 5) negligence.  The Complaint states the cause of action for assault and battery twice, once in Count Three and again in Count Four.  The Counts are identical and were obviously duplicated in error.  An Amended Complaint was filed by the Plaintiff on December 4, 2003, alleging exactly the same causes of action.

In an Order dated November 31, 2003, the District Court held:

all claims against [Defendants Dodd and Loring] in their individual capacities are hereby DISMISSED, except the 42 U.S.C. § 1983 claim for excessive force and the state law claim of assault and battery.

Presently before the Court are the Motions for Summary Judgment filed by Defendants Dodd and Loring (doc. 29), Defendant Jones (doc. 32), and Defendant Municipality of Cleveland (doc. 34),

as well as the Plaintiff's Motion to Strike (doc. 39).

## II.    FACTS[1]

On September 14, 2001, Defendants Loring and Dodd were working as Blount County Sheriff's Deputies, in Cleveland, Alabama, at the Cleveland High School football game.  *Loring Affidavit*, at 1; *Dodd Affidavit*, at 1.  The Plaintiff received a call from a family friend informing him that there were "some problems" with his son Blake at the game.[2]  It is undisputed that the Plaintiff and his then girlfriend, now wife, left the Plaintiff's home and came to the game.  It is also undisputed that Plaintiff entered the gates of the stadium.  Thereafter, what occurred is hotly disputed.

The evidence, when viewed in the light most favorable to the Plaintiff, reflects that the Plaintiff approached the gate and spoke to officers Loring and Dodd.  *Deposition of Joseph Williams ("Williams Deposition"),* at 193; *Loring Affidavit*, at 2; *Dodd Affidavit*, at 2.  The Plaintiff asked these officers what the problem with his son Blake was.  The officers told him he needed to talk to a Mr. Hargett and a Ms. Martin about that.  *Id.*  When the Plaintiff asked if these individuals were around, the officers said "no" and said to him "You need to get him out of here,"--referring to his son, Blake.  The Plaintiff said "okay" and then started back to his truck where his girlfriend still waited.

It was at this point that the Plaintiff realized that his younger son, Chance, was still at the

---

[1]Where facts are in dispute, they are presented herein in the light most favorable to the Plaintiff.  Where possible, the Court will note sections of facts which are in dispute.

[2]The Defendants contend that the family friend had informed the Plaintiff that his son had been "banned" from the stadium.  Although Defendants cite the Plaintiff's deposition testimony for this assertion, that testimony actually reads only that the Plaintiff was informed that there were problems with his son at the stadium.

game and, since he had ridden to the game with Blake, needed to be picked up also.  The Plaintiff

testified at his earlier criminal proceeding as follows:

> A       . . . Anyhow I got to the truck and I forgot I had to go back and get Chance.
> I walked through the gate and Officer Jones hollered at me, "Where are you
> going?"  I said, "I'm going to get my son."  He said, "You've got your son.
> You are under arrest."  That is when I put my hands up.  I said, "What for?
> I'm just going to get my son."  That is when all the commotion started.
> When I was shoved to the fence, that is when Officer Dodd pepper sprayed
> me.  The only profanity I used was, "What the hell did you do that for?"

*Testimony of Joseph Williams*, at 123-124.[3]  The Plaintiff stated that he never used profanity other

than that one time.  The Plaintiff says he grabbed the fence because he "didn't want to mess up [his]

face and get cut up."  *Id.* at 126.  The Plaintiff, when asked how he eventually hit the ground

testified:

> A       All I know is after they pepper sprayed me, everything went so fast.  I don't
> know if he hit me before.  At that time I was on my knees.  They got me on
> the ground and then they rolled me over.

*Id.* The Plaintiff denies ever taking a swing at anyone.  *Id.*  He does remember being hit by the

officers around his knees.  *Id.* at 128.

      The Plaintiff's wife testified that she heard a commotion and saw the Plaintiff put his hands

up.  *Testimony of Ramona Williams*, at 80.  She also stated that she saw the officers hitting the

Plaintiff after he was on the ground.  *Id.* at 74.  She testified to seeing Defendants Jones, Loring and

Dodd all with night sticks in their hands.  *Id.* at 82.

---

[3]In his deposition, the Plaintiff also states that Officer Jones told him he was under arrest,
and pushed him into the fence.  *Williams Deposition*, at 131, 194.  He also stated that he could
not remember Dodd or Loring tell him he was under arrest.  *Id.* at 194-195.  He stated in
deposition that he does not know who put handcuffs on his wrists.  *Id.*  at 195.  In his deposition
he stated that he did not know whether Officer Jones or Dodd grabbed him on the shoulder.  *Id.*
He is sure that Officer Dodd pepper sprayed him.  *Id.* at 195-196.

The Plaintiff's son, Blake, testified as follows about his father's conduct that night:

A    When he got there, he was just trying to figure out what was going on and to make sure everything was okay, We were asked to leave the ballgame.

Q    Were both of you asked to leave the field or were you asked to leave the field?

A    I was asked to leave the ballgame.

Q    Okay, go ahead.

A    We turned around and started walking off and I said, "Dad, my little brother is still in there.  Somebody has got to get him."

Q    That is Chance.  Right?

A    Yes, ma'am.

Q    Where was he?

A    He was somewhere inside the football game.

Q    What happened after that?

A    After that we started walking back to the football field.  I stood at the gate and they told him, "You need to leave."  He said, "I'm just going to get my son."  They said, "You have already got your son."  After that is when the incident happened.

Q    He told who that he was going to get his son?  Was it a police officer?

A    Yes, ma'am.

Q    Do you remember what police officer it was?

A    It was Officer Jones.

Q    After that little conversation took place, what happened next–just what you saw?

A    From what I saw, Daddy was walking back in the football gates to get my little brother.  As I said, they were telling me to leave so I stayed outside the

4

gates.  He walked in there.  I heard him go "You are under arrest".  He threw his hands up and said, "What for?"  That is when everything happened.

Q      You said "him".    Was that Chief Jones again that said "You are under arrest"?

A      Yes ma'am.

Q      Then after that you said he put his hands in the air?

A      Yes, ma'am.

Q      After that altercation, what happened next?

A      That is when they jumped on my dad.

Q      Who is they?

A      Mr. Jones and I don't know the other officer's names.

Q      It was Chief Jones and two other officers?

A      Yes, ma'am.

Q      Were the other officers in uniform?

A      Yes Ma'am.

Q      Did you see your dad take a swing at anybody?

A      No, ma'am.

Q      Was anybody armed?

A      My dad was not.

Q      Did anybody have a baton or mace or anything like that?

A      The police officers did but nobody else did.

Q      When you said they attacked him–tell me specifically what they did.

* * *

5

A       He stood up and went to him as he had his arms up like this.  He grabbed him
        like that and slung him back this way trying to put his arms behind his back.

* * *

Q       Then what happened?

A       He grabbed him and slung him around and put his hands behind his back and
        put the cuffs on.  He threw him up against the gate.  That is when the batons
        came out and the mace was sprayed in his eyes.  They threw him up against
        the gates of the football field.  They was on the ground.  I seen batons come
        down and hit him in the back of his legs.  He was on his back and they hit
        him in the legs two or three times that I can remember.

*Testimony of Blake Williams*, at 87-90.  This witness on cross clarified that Chief Jones "maced" the

Plaintiff but did not hit him.  *Id.* at 96-97.  He also confirmed that the other two officers did hit the

Plaintiff.  *Id.*

Testimony from Byron Stevens confirmed that the Plaintiff did not take a swing at anyone,

and that he had his hands up when the officers turned him around.  *Testimony of Byron Stevens*, at

100.  He also confirmed the use of "mace" on the Plaintiff and specifically testified that he saw the

deputy sheriffs with batons out but did not actually see them hit the Plaintiff.  *Id.* at 100-101, 103.

Testimony of Shay Stevenson confirmed that the Plaintiff was grabbed by Defendant Jones

as he entered the gate to the stadium.  *Testimony of Shay Stevenson*, at 107.  This witness also heard

no profanity nor aggressive action from the Plaintiff.  *Id.*  Also, this witness confirms that the

Plaintiff was thrown or fell into a fence, hit by at least one officer with a baton, and had "mace"

sprayed into his eyes.  *Id.* at 108, 113.

Witness Cindy Going testified to never seeing the Plaintiff take aggressive action towards

the officers, and seeing at least one officer hit the Plaintiff.  *Testimony of Cindy Going*, at 116, 118.

She said she saw the *Sheriff* hit the Plaintiff, and that Defendant Jones grabbed the Plaintiff.  *Id.* at 117-118. She also confirmed that the Plaintiff used no obscenities.  *Id.*[4]

Defendant Loring admits to having grabbed the Plaintiff by his shoulder, then striking the Plaintiff on the upper part of the leg with his expandable baton.  *Loring Affidavit*, at 2; *Loring Testimony*, at 27-28, 33-34.  Defendant Loring also testified Defendant Dodd used "pepper spray" on the Plaintiff.  *Id.* at 3.

Defendant Dodd says he saw Defendant Jones place his arm on the Plaintiff's shoulder.  *Dodd Affidavit*, at 3; *Dodd Testimony*, at 15.  He also admitted to "attempt[ing] to assist Chief Jones in the struggle with the Plaintiff."  *Dodd Affidavit*, at 3; *Dodd Testimony*, at 16.  He stated that he struggled with the Plaintiff.  *Id.*  He also admitted to administering a non-lethal chemical spray to the Plaintiff, and seeing Defendant Loring strike the Plaintiff just above the knee with an expandible baton.  *Id.* at 4.

## III.    STANDARD OF REVIEW

> In conducting [a summary judgment analysis], [the Court must] view all evidence and factual inferences in the light most favorable to the nonmoving party. *Id.* Summary judgment is proper where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment. *Id.*

---

[4]The Court realizes that these facts are hotly contested by the Defendants who contend that the Plaintiff entered the stadium, cursed the officers, and was only arrested after he appeared to be ready to strike Chief Jones, and after the Plaintiff refused to go outside the stadium and discuss the matter with Chief Jones.  Defendants also contend that the Plaintiff resisted arrest and struggled with the officers.

*Lofton v. Secretary of Dept. of Children and Family Services,* 358 F.3d 804, 809 (11th Cir. 2004).

**IV.    ANALYSIS**

**A.    Defendants Dodd and Loring's Motion for Summary Judgment**

At oral argument, Counsel for the Plaintiff clarified that all Counts are alleged against these Defendants in their individual capacities only.  Accordingly, to the extent the Complaint can be read to make a claim against these Defendants in their official capacity, Summary Judgment is due to be **GRANTED**.  Judgment will be **ENTERED** in favor of these Defendants and against the Plaintiff on all Counts of the Complaint alleged against these Defendants in their official capacity.

**1.    Count One – Violation of the Plaintiff's Constitutional Rights Pursuant to 42 U.S.C. § 1983**

Count One of the Complaint is alleged against Defendants Loring and Dodd individually. It states as follows:

> Plaintiff alleges that defendants had no probable cause to arrest him, that he was not intoxicated, was not disorderly and did not resist arrest.  Therefore, the arrest, beating, incarceration and prosecution that resulted were likewise without probable cause and violated his rights under the Fourth and Fifth Amendments to the United States Constitution, as made applicable to the states under the Fourteenth Amendment.

*Amended Complaint*, at 3.  A previous order of this Court dismissed all Section 1983 claims against these Defendants, in their individual capacities, except an "excessive force" claim.  Notably, the specific words "excessive force" are not used in the Complaint.  This had led the Defendants to argue that no such claim exists in the case, despite this Court's earlier findings to the contrary.  The Amended Complaint, in Count One, also complains of the subsequent "beating" of the Plaintiff. There is evidence that Defendants Dodd and Loring took part in "beating" the Plaintiff.  The Court is satisfied that the allegations that the Defendants delivered a "beating" to the Plaintiff "without

8

probable cause" would be sufficient to allege an excessive force claim under the circumstances of this case. In any case, the Court is not inclined to second guess the previous Judge's ruling in this matter.

The Defendants contend, however, that even if a claim for excessive force is appropriate, qualified immunity protects them in this case.

### a.      Qualified Immunity

Defendants Dodd and Loring first argue that they are entitled to qualified immunity on Count One of the Amended Complaint.

### I.      Complete Protection to Governmental Officials Sued in Their Individual Capacity

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Vinyard v. Wilson,* 311 F.3d 1340, 1346 (11th Cir.2002) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

*Wood v. Kesler,* 323 F.3d 872, 877 (11th Cir. 2003).

### ii.      The Doctrine Applied

To receive qualified immunity, "the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Id.* (internal quotation marks omitted). . . . "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id.*

*Lassiter v. Alabama A & M University, Bd. of Trustees,* 28 F.3d 1146, 1149 n. 2 (11th Cir.1994).

In this case, all sides agree that the Defendants were acting within their discretionary authority.[5]   Thus, the burden shifts to the Plaintiff to establish that qualified immunity is not

---

[5]At oral argument, the Plaintiff conceded this point.

appropriate.

### iii.    Plaintiff's Burden to Show Qualified Immunity Not Appropriate

#### (1)    The Plaintiff's Allegations, Taken as True Establish a Constitutional Violation.

The Supreme Court has set forth a two-part test for the qualified immunity analysis. "The threshold inquiry a court must undertake in a qualified immunity analysis is whether [the] plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer,* 536 U.S. 730, 122 S.Ct. 2508, 2513, 153 L.Ed.2d 666 (2002) (citing *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151.

*Wood*, 323 F.3d at 877 -878.

In this case, the facts, when viewed in the light most favorable to the Plaintiff, establish that the Plaintiff peaceably entered the stadium, told an officer he was entering to retrieve his child, and was then arrested.  However, the evidence is also clear that it was Chief Dodd who placed the Plaintiff under arrest.  In fact, Counsel for the Plaintiff admitted, at oral argument, that that was the case, and that these Defendants did not "effect" the arrest.  Officers Loring and Dodd testified that they only intervened after the scuffle began between Chief Jones and the Plaintiff.  *Loring Affidavit*, at 2; *Dodd Affidavit*, at 3.

The Plaintiff asserts that because there was no probable cause for the *arrest* in this case, any force used in that arrest is excessive.  The parties have not provided, and this Court has not found, any precedent dealing with the scenario of non-arresting officers who "assist" in the arrest.  That is not to say that other authorities have not addressed the issue.  Some of these authorities establish that "an officer who is not present at the outset and who comes to the assistance of the arresting officer

10

is not liable under § 1983 merely for assisting the arresting officer in making an unlawful arrest if the circumstances are such that the assisting officer neither knew nor should have known that an unlawful arrest was taking place. *"Donaldson v. Hovanec*, 473 F. Supp 602 (E.D. Pa. 1979). See also *Lusby v. T G & Y Stores Inc*, 749 F.2d 1423 (10th Cir. 1984) [although officer is not liable merely for being present when unlawful force is used, officer may be liable for failing to intervene when officer has opportunity to do so]." James Lockhart, *Cause of Action Under 42 USC § 1983 for Unlawful Arrest or Detention*, 9 Causes of Action 237, § 31 (2004).

A review of this Circuit's rules on probable cause is instructive as to how much weight to accord these opinions.  The Eleventh Circuit, in the context of an arrest, has stated that

> [t]he issue . . . is not whether probable cause existed but instead whether there was arguable probable cause. Qualified immunity applies when there was arguable probable cause for an arrest even if actual probable cause did not exist. *Jones v. Cannon,* 174 F.3d 1271, 1283 n. 3 (11th Cir.1999) ("Arguable probable cause, not the higher standard of actual probable cause, governs the qualified immunity inquiry."). Arguable probable cause exists if, under all of the facts and circumstances, an officer reasonably could--not necessarily would--have believed that probable cause was present. *Durruthy v. Pastor,* 351 F.3d 1080, 1089 (11th Cir.2003) ("Arguable probable cause exists when an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed." (internal marks and citation omitted)); *Montoute v. Carr,* 114 F.3d 181, 184 (11th Cir.1997) ("In order to be entitled to qualified immunity from a Fourth Amendment claim, an officer need not have actual probable cause but only 'arguable probable cause,' i.e., the facts and circumstances must be such that the officer reasonably could have believed that probable cause existed.").

*Crosby v. Monroe County*, 394 F.3d 1328, 1332 -1333 (11th Cir., 2004).  "Arguable probable cause" focuses on the same level of scienter that "knew or should have known" does.  Because of the similarity, this Court is persuaded that the Court of Appeals would follow a similar review when dealing with the facts of this case.  In other words, the Court would focus on whether the assisting officers had knowledge of facts which would lead him to believe that the arrest is unlawful.

11

Both of these Defendants testified that they observed the facts leading up to the arrest of the Plaintiff.  Both testified to approaching the scene of the arrest prior to the actual arrest itself.  Both testified to being close enough to hear the conversation between the Plaintiff and Chief Jones.  These facts, when viewed in the light most favorable to the Plaintiff, along with the other testimony in the case, demonstrates that these officers knew there was no probable cause to arrest or to use any force on the Plaintiff in effecting that arrest.  *See Rankin v. Evans*, 133 F. 3d 1425, 1435 (11th Cir. 1998); *Williamson v. Mills*, 65 F.3d 155, 158 (11th Cir. 1995).  "A warrantless arrest without probable cause violates the Constitution and forms the basis for a section 1983 claim."  *Marx v. Gumbinner*, 905 F.2d 1503, 1505 (11th Cir. 1990).

### (2)      The Right Was Clearly Established.

> However, "[i]f a constitutional right would have been violated under the plaintiff's version of the facts, 'the next, sequential step is to ask whether the right was clearly established.' " *Vinyard,* 311 F.3d at 1346 (quoting *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151).

*Id.* at 878.

> For a "right" to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that *what he is doing* violates that right." *Anderson v. Creighton,* 483 U.S. 635, 639-40, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) (emphasis added). "[I]n the light of pre-existing law the unlawfulness must be apparent." *Id.* As the en banc court recently explained:

>> When considering whether the law applicable to certain facts is clearly established, the facts of cases relied upon as precedent are important. The facts need not be the same as the facts of the immediate case. But they do need to be materially similar. *See, e.g., Edwards v. Gilbert,* 867 F.2d 1271, 1277 (11th Cir.1989). Public officials are not obligated to be creative or imaginative in drawing analogies from previously decided cases.

> *Adams v. St. Lucie County Sheriff's Dept.,* 962 F.2d 1563, 1575 (11th Cir.1992) (Edmondson, J., dissenting), *approved en banc,* 998 F.2d 923 (11th Cir.1993). Put

12

differently, "[i]f case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1557 (11th Cir.1993).

*Rodgers v. Horsley,* 39 F.3d 308, 310 -311 (11th Cir. 1994) (finding no clearly established right where Plaintiff had failed to show that at the time of the alleged tort the law was clearly established because she pointed to no bright line established by pre-existing case law that would make it "apparent" to the defendants that what they were doing (or failing to do) was unlawful). If there is no such bright line shown, a plaintiff can overcome qualified immunity "only by showing that the official's conduct lies so obviously at the very core of what the [law] prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of caselaw." *Smith v. Mattox,* 127 F.3d 1416, 1419 (11th Cir. 1997).

In this case, the Court is convinced that trained officers and Sheriff's deputies are acutely aware that probable cause to execute a warrantless arrest exists only when "the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Williamson v. Mills*, 65 F.3d 155, 158 (11th Cir. 1995). Such a rule is entrenched in Eleventh Circuit and other caselaw, and is the type of bright line that would put the Defendants on notice that what they were doing was unlawful.

Under these circumstances, the Defendants are not entitled to the protection of qualified immunity.

**2.     Counts Three and Four – State Law Claims for Assault and Battery**

13

Defendants next argue that they are entitled to Summary Judgment on the state law claims against them for assault and battery, based on the defense of Sovereign Immunity.  In this context, the Alabama Supreme Court has held:

> A State agent *shall* be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's
> (1) formulating plans, policies, or designs; or
> (2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
> (a) making administrative adjudications;
> (b) allocating resources;
> (c) negotiating contracts;
> (d) hiring, firing, transferring, assigning, or supervising personnel; or
> (3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or
> (4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons; or
> (5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.
>
> Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent *shall not* be immune from civil liability in his or her personal capacity
> (1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
> (2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.

*Ex parte Cranman,* 792 So.2d 392, 405 (Ala., 2000).  The Plaintiff has never alleged that these Defendants acted outside the scope of their authority.  Indeed, in arguing against the Qualified Immunity defense, the Plaintiff admitted that these defendants acted *within the scope of their discretionary authority.  See Plaintiff's Brief in Opposition to Defendants' Motion for Summary*

14

*Judgment*, at 7.[6]

The evidence, even when viewed in the light most favorable to the Plaintiff, establishes that the arrests were made, under color of law, by officers whose job it was to make such arrests. The actions, taken properly or improperly, were official actions. These Defendants' actions fall squarely within the ambit of "exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons." There is no evidence that the Defendants fell into either of the exceptions listed in *Cranman*.

Based on the foregoing, the Motion for Summary Judgment as to Counts Three and Four is due to be **GRANTED**.

### 3.      Punitive Damages Claims

Because the claims made by the Plaintiff are essentially claims against the state, all claims for punitive damages in the Complaint against these Defendants are due to be dismissed in the 1983 action as barred by the Eleventh Amendment. *City of Newport v. Fact Concerts*, 453 U.S. 247 (1981).

### B.      Defendant Jones's Motion for Summary Judgment[7]

At oral argument, Plaintiff's counsel clarified that all Counts of the Complaint are alleged against Defendant Jones in his individual capacity alone. Accordingly, to the extent the Complaint can be read to include claims asserted against this Defendant in his Official Capacity, the Motion for Summary Judgment is due to be **GRANTED**. Judgment will be **ENTERED** in favor of the Defendant and against the Plaintiff on these claims.

---

[6]Plaintiff's counsel admitted same at the hearing in this matter.

[7]Plaintiff does not respond to any of the arguments made by this Defendant.

15

### 1.      Count One

#### a.      The Plaintiff's Claims May Only Rest Under the Fourth Amendment

Courts examining claims of excessive use of force, improper arrest, etc., based on lack of probable cause, under Section 1983, must analyze such claims under the Fourth Amendment. *Graham v. Conner*, 490 U.S. 386, 388 (1989); *Walker v. Briley*, 140 F. Supp. 2d 1249 (N.D. Ala. 2001).   Accordingly, to the extent the Plaintiff makes claims under Section 1983 under the Fifth and Fourteenth Amendments, Summary Judgment is due to be **GRANTED** in favor of the Defendant.

#### b.      The Defendant Is Not Entitled to Qualified Immunity and the Plaintiff Does Make Out a Section 1983 Case.

Defendant first claims that he is entitled to Summary Judgment on this Count in his individual capacity based on the defense of Qualified Immunity.

#### I.      Qualified Immunity

##### (1)      Complete Protection to Governmental Officials Sued in Their Individual Capacity

As noted above

> To receive qualified immunity, "the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Id.* (internal quotation marks omitted). . . . "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id.*

*Lassiter v. Alabama A & M University, Bd. of Trustees,* 28 F.3d 1146, *1149 n. 2 (11th Cir.1994).

In this case, the Plaintiff does not address whether the Defendant's conduct fell within his

discretionary authority.  The Court is convinced that it does.[8]  Thus, the burden shifts to the Plaintiff

to establish that qualified immunity is not appropriate.

> (2)    **Plaintiff's Burden to Show Qualified Immunity Not Appropriate**
>
> > (a)    **The Plaintiff's Allegations, Taken as True, Establish a Constitutional Violation.**

The Supreme Court has set forth a two-part test for the qualified immunity analysis.

> "The threshold inquiry a court must undertake in a qualified immunity analysis is whether [the] plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer,* 536 U.S. 730, 122 S.Ct. 2508, 2513, 153 L.Ed.2d 666 (2002) (citing *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151.

*Wood*, 323 F.3d at 877 -878.

In this case, the facts, when viewed in the light most favorable to the Plaintiff, establish that

the Plaintiff peaceably entered the stadium, told Defendant Jones that he was entering to retrieve his

child, and was then arrested by Defendant Jones.  The facts also establish that this Defendant Jones

intentionally grabbed the Plaintiff, pushed him into a fence, placed him under arrest, and participated

in subduing him in a manner which caused him injury.  At least one witness stated he saw this

Defendant "mace" the Plaintiff.  In addition, there was testimony that Defendant Jones "jumped on"

the Plaintiff, and helped throw him up against a fence.  Under these circumstances, there was no

probable cause to arrest or to use any force on the Plaintiff in effecting that arrest.  *See Rankin v.*

*Evans*, 133 F. 3d 1425, 1435 (11th Cir. 1998); *Williamson v. Mills*, 65 F.3d 155, 158 (11th Cir. 1995).

---

[8]Because the Court holds that the defense of Qualified Immunity does not apply to this defendant, for the purposes of this opinion, the Court sees no need to rationalize its holding on this matter.

"A warrantless arrest without probable cause violates the Constitution and forms the basis for a section 1983 claim." *Marx v. Gumbinner*, 905 F.2d 1503, 1505 (11th Cir. 1990).

                      **(b)**        **The Right Was Clearly Established.**

In this case, the Court is convinced that a trained police chief is acutely aware that probable cause to execute a warrantless arrest exists only when "the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Williamson v. Mills*, 65 F.3d 155, 158 (11th Cir. 1995). Such a rule is entrenched in Eleventh Circuit and other caselaw, and is the type of bright line that would put the Defendant on notice that what he was doing was unlawful.

Under these circumstances, the Defendant is not entitled to the protection of qualified immunity.

                     **ii.**        **There Is a Claim Under Section 1983**

For the reasons stated above, the facts, when viewed in the light most favorable to the Plaintiff, establish a Section 1983 claim against this Defendant on the excessive force claims. However, there is no evidence that this Defendant participated in the incarceration and prosecution of the Plaintiff. Therefore, as to these particular aspects of Count One, Summary Judgment is due to be **GRANTED**.

                  **c.**        **Claims for Punitive Damages Are Improper**

Suits against city officials in their official capacity are, in effect suits against the city. *Busby v. Orlando*, 931 F.2d 764, 776 (11th Cir. 1991). A municipality may not be held liable for punitive damages under Section 1983. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).

Accordingly, to the extent Count One makes claims for punitive damages against this Defendant, Summary Judgment is due to be **GRANTED**.

### 2.    Count Two – False Imprisonment

As to this, Count this Defendant merely argues that the Plaintiff cannot make out the element of "unlawfulness" necessary to establish this tort.  However, as shown above, the facts, when viewed in the light most favorable to the Plaintiff, establish an arrest which occurred without probable cause and was therefore unlawful.  Summary Judgment as to this Count is due to be **DENIED**.

### 3.    Counts Three and Four – Assault and Battery

Again, as to these Counts, this Defendant merely argues that the Plaintiff cannot make out the element of "unlawfulness" necessary to establish this tort.  Again, as shown above, the facts, when viewed in the light most favorable to the Plaintiff, establish an arrest which occurred without probable cause and was therefore unlawful.  Summary Judgment as to these Counts is due to be **DENIED**.

### 4.    Count Five – Wantonness

The facts, when viewed in the light most favorable to the Plaintiff, establish that this Defendant intentionally grabbed the Plaintiff, pushed him into a fence, placed him under arrest, and participated in subduing him in a manner which caused him injury.  At least one witness stated he saw this Defendant "mace" the Plaintiff.  In addition, there was testimony that Defendant Jones "jumped on" the Plaintiff, and helped throw him up against a fence.  There was testimony from witnesses that this Defendant, without probable cause, told the Plaintiff he was under arrest before all of these events occurred.  That the Defendant intended all the actions he took thereafter can be inferred from the conduct itself and that statement.  Based on these facts, Summary Judgment is not

appropriate as to the Wantonness claim and will be **DENIED**.

        **5.**        **Count Six – Negligence**

Discretionary function immunity under Ala. Code § 6-5-338 provides immunity to peace officers from liability occurred in the performance of their discretionary law enforcement duties. The Supreme Court of Alabama has determined that an officer is entitled to discretionary function immunity both for his decision to make an arrest and for the manner in which he chooses to make the arrest. *See City of Birmingham v. Sutherland*, 834 So. 2d 755, 761 (Ala. 2002). The Defendant has demonstrated that he was performing a discretionary function when he took the actions alleged in the complaint. The burden would then shift to the Plaintiff to establish that the Defendant acted fraudulently, in bad faith, or with malice or willfulness, in order to deny the immunity from suit. *Moore v. Adams*, 754 So.2d 630, 632 (Ala. 1999). Again, the Plaintiff has not responded to this specific argument. However, it is clear that the facts, when viewed in the light most favorable to the Plaintiff, establish a cause of action for wantonness–which is equated with willfulness. However, for something to be willful it cannot also be negligent. Therefore, while this defense would not apply to the Plaintiff's wantonness claims, it seems that it would apply to any claims of negligence. As to Count Six, the Motion for Summary Judgment will be **GRANTED**.

    **C.**    **Motion for Summary Judgment of the Municipality of Cleveland**

        **1.**        **Count One – Section 1983**

A municipality may not be held liable in a Section 1983 claim unless the plaintiff "identif[ies] a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397 (1997). The Plaintiff makes no such claim, but merely bases his claim against the city upon the actions of the individual Defendants. Section 1983

claims cannot be pursued against a municipality under a theory of *respondeat superior*. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1977). Accordingly, the motion for summary Judgment as to the Section 1983 and 1988[9] claims against the city is due to be **GRANTED**.

### 2. The City Cannot Be Held Liable for Intentional Torts

The Counts of False Imprisonment (Count Two), Assault and Battery (Counts Three and Four), and Wantonness (Count Five) are intentional torts. Alabama law provides:

> No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness or unskillfulness of some agent, officer or employee of the municipality engaged in work therefor and while acting in the line of his or her duty.

*Ala. Code* § 11-47-190. Accordingly, the City cannot be held liable for intentional torts. *See Brooks v. City of Birmingham*, 584 So. 2d 451 (Ala. 1991); *Hilliard v. City of Huntsville,* 585 So. 2d 889, 892 (Ala. 1991) (wantonness); *Altmayer v. City of Daphne*, 613 So. 2d 366, 369 (Ala. 1993) (willfulness and recklessness); *Beech v. City of Mobile*, 874 F. Supp 1305, 1314 (S.D. Ala. 1994) (assault); *Rose v. Town of Jackson's Gap*, 952 F. Supp. 757 (M.D. Ala. 1996)(false imprisonment). The Motion for Summary Judgment as to Counts Two, Three, Four, and Five is due to be **GRANTED**.

### 3. Count Six – Negligence

As shown above, the city's liability, if any, must be premised only on the conduct of its employee, Defendant Jones. Since discretionary function immunity applies to the Chief, the city is also not liable. Accordingly, the Motion for Summary Judgment as to Count Six is due to be

---

[9]Section 1988 claims do not create their own independent cause of action, and should be analyzed under the Section 1983 framework. *McLaughlin v. City of LaGrange*, 662 F.2d 1385 (11th Cir. 1981).

**GRANTED**.

      **D.**      **Motion to Strike**

The Plaintiff's Motion to Strike will be **DENIED**.

**V.**      **CONCLUSION**

A separate order will be entered in accordance with the Memorandum Opinion above.

DONE this 10 th day of March, 2005.

 

**VIRGINIA EMERSON HOPKINS**
United States District Judge